IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARREN L. MILLER,** | ) |
|     **Plaintiff,** | )    C.A. No. 1:19-cv-339 |
| | ) |
|     v. | ) |
| | )    RE: Motion to Dismiss the |
| | )         Amended Complaint [75] |
| **AMANDA HARTWELL, et al,** | ) |
|     **Defendants.** | ) |

# MEMORANDUM OPINION

U.S. D.J. Susan Paradise Baxter

Pending before this Court is the Motion to Dismiss the Amended Complaint filed by Department of Corrections' Defendants Ennis, Smock, and Santos. ECF No. 75. The motion will be granted in part and denied in part.

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiff Darren Miller is a pro se litigant currently incarcerated at SCI Fayette. Mr. Miller brings this action against Defendants Dr. Hartwell[1], Ennis, Smock, and Santos. His claims arise out of his treatment by prison staff at SCI Albion following an injury. In his Amended Complaint, Plaintiff asserts three claims arising under the First, Eighth, and Fourteenth Amendments against the three Department of Corrections Defendants. These Defendants filed a motion to dismiss [ECF No. 75] and Plaintiff has filed a brief in opposition [ECF No. 87]. The motion is fully briefed and is ripe for disposition by this Court.

---

[1] Defendant Dr. Hartwell is represented by private counsel and has filed an Answer in response to the Amended Complaint. *See* ECF No. 78.

1

## II.  STANDARDS OF REVIEW

### A.  Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewics*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) *citing Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal

conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555, *citing Papasan*, 48 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) *quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Pro Se Filings

Because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Thus, the Court may

consider facts and make inferences where it is appropriate. But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. App'x 227 (3d Cir. 2020) (citations omitted).

### III.  THE ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff asserts three claims arising under the First, Eighth, and Fourteenth Amendments against the Department of Corrections Defendants. Plaintiff identifies Defendant Paul Ennis as the Deputy Superintendent for Centralized Services; Jerri Smock as the Correctional Health Care Administrator; and Santos as a Unit Manager assigned to E-A Unit. ECF No. 67.

In August 2019, after Plaintiff was diagnosed with a rupture of his Achilles' tendon, Dr. Hartwell, a prison doctor, ordered bottom bunk and bottom tier status for him. Plaintiff then was examined by an outside orthopedic surgeon who prescribed an orthopedic boot with a 40 degree wedge. The guards accompanying Plaintiff to that appointment refused to allow Plaintiff to receive the wedged boot and instead demanded that Plaintiff be given a plastic boot. Plaintiff claims that plastic boot was ill-fitting and did not stabilize his foot resulting in increased swelling and pain.

Upon returning to the prison, Plaintiff submitted sick call slips trying to obtain the prescribed boot and his requests were ignored. Plaintiff spoke with CHCA Smock on August 14th and followed up with her through a request slip the following day. Plaintiff sent a copy of the request slip to Defendant Ennis.

Defendant Santos, the unit manager, was aware of Plaintiff's injury and aware of Dr. Hartwell's order for bottom bunk/bottom tier housing status. Plaintiff did not receive the bottom-

tier housing assignment. On September 12, 2019, as he was walking up the stairs to his cell, Plaintiff fell backward down several metal steps landing on his head and tailbone. As a result of the fall, Plaintiff continues to suffer "paralysis in his lower extremities, nerve damage, and piercing pain from [his] lower back down the back of [his] legs to [his] feet." *Id*. at ¶ 42.

Following the fall and a trip to the hospital emergency room, Plaintiff was admitted to the prison infirmary. Shortly thereafter, Dr. Hartwell released Plaintiff, verbally berating him for feigning injury and denying his request for a wheelchair. Plaintiff alleges that because of the lack of a wheelchair, he had no access to showers, law library, and his personal property.

Plaintiff brings the following claims against the Department of Corrections Defendants:

> Count I – violation of Eighth and Fourteenth Amendments against Santos and Smock based on the failure to carry out doctor's orders for a bottom tier housing assignment;
>
> Count II – violation of Eighth and Fourteenth Amendments based on deliberate indifference against Smock and Ennis based on the denial of medical care for non-medical reasons; and
>
> Count III – violation of Eighth and Fourteenth Amendments against Smock and Ennis based on denial of wheelchair and access to showers and violation of First Amendment right to petition based on lack of access to the law library and the administrative remedy process.

### IV.   THE FOURTEENTH AMENDMENT CLAIMS

To the extent that Plaintiff is advancing any of his claims under the Fourteenth Amendment's Due Process Clause, they will be dismissed.

The more-specific-provision rule provides that, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). *See also*

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."). Pursuant to this principle, allegations of inadequate medical care in the prison context must be analyzed "under the more specific Eighth Amendment standards set forth in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)," rather than the more general standards applicable to Fourteenth Amendment claims. *Classen v. Nutter*, 2017 WL 6017341, at *7 (E.D. Pa. Dec. 4, 2017). The same is true of First Amendment right to petition claims. *See, e.g., Riley v. Beard,* 2011 WL 1204264 (W.D. Pa. 2011).

Accordingly, Plaintiff's Fourteenth Amendment claims cannot survive a motion to dismiss and cannot be cured by amendment. *See, e.g., Davis v. Pennsylvania Dept. of Corr.,* 2016 WL 1072911, at *7 (W.D. Pa. Mar. 18, 2016) (dismissing substantive due process claims regarding plaintiff's medical care because such claims "are more appropriately analyzed under the more specific Eighth Amendment provision than under the more general and open-ended standard of substantive due process"); *Lane v. Pennsylvania Dept. of Corrections*, 2015 WL 5016512, *12 (M.D. Pa. June 22, 2015) (dismissing plaintiff's Fourteenth Amendment claim as redundant of his First Amendment claim).

## V. THE FIRST AMENDMENT CLAIMS

Plaintiff alleges that Department of Corrections Defendants Smock and Ennis violated his First Amendment rights by 1) depriving him of an available administrative remedy process and 2) denying him access to the law library.

The First Amendment confers a "right to petition the Government" which traditionally encompasses access to the courts. *Capozzi v. N'Diaye*, 2022 WL 37344, at *2 (D.N.J. Jan. 4, 2022) *quoting Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.17 (3d Cir. 2018). However, there is no First Amendment[2] right to an "administrative grievance process..." *Gittens v. Scholtz*, 2019 WL 3417091, at *4 (D.N.J. July 29, 2019) *quoting Horsh v. Clark*, 2019 WL 1243009, at *5 (W.D. Pa. Mar. 18, 2019). *See also Bakhtiari v. Spaulding*, 2017 WL 2778524, at *14 (M.D. Pa. 2017) (inmate "has no constitutional right to a grievance process.").[3]

On the other hand, prisoners do maintain a constitutional right of access to the Courts which includes access to an adequate law library. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977). But, inmates "may only proceed on access-to-courts claims in two types of cases[:] challenges (direct or collateral) to their sentences and conditions of confinement." *Williams v. Russell*, 2021 WL 5050116, at * 9 (W.D. Pa. Oct. 29, 2021) *citing Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). The First Amendment does not guarantee inmates a minimum amount of time in the law library. *See Lewis*, 518 U.S. at 355 (Supreme Court precedent "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall

---

[2] Similarly, inmates have "no constitutional right to a grievance procedure" under the Fifth Amendment (*see Caldwell v. Beard*, 324 Fed. App'x 186 (3d Cir. 2009)), nor the Fourteenth Amendment (*see Peterson v. Holmes*, 2012 WL 5451435 (D.N.J. 2019).

[3] Here, Plaintiff mistakes the exhaustion requirement of the Prison Litigation Reform Act for a constitutional right. While the PLRA does require the exhaustion of administrative remedies before filing suit in federal court, it does not confer a private constitutional right to a grievance process. There is no "independent constitutional right to state administrative grievance procedures." *See Boyd v. Werholtz,* 443 Fed. App'x 331, 332 (10th Cir. 2011). Instead, the PLRA created an affirmative defense that must be pled and proven by defendants that the claims were not exhausted. *See Small v. Camden Cty.,* 728 F.3d 265, 268 (3d Cir. 2013). Significantly here, the Defendants have withdrawn any arguments related to exhaustion. *See* ECF No. 76, pages 4-5.

claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

Certain pleading standards apply to access-to-courts claims. Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim to the Court, they must show (1) that they suffered an "actual injury"—that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. *Id*. "To that end, prisoners must satisfy certain pleading requirements: the complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " *Id.* at 205–06. "The underlying claim, ... is an element that must be described in the complaint as though it were being independently pursued." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, Plaintiff only alleges that he was deprived of access to the law library "over long periods of time." He does not explain how he was injured by missing time in the law library. As pled, Plaintiff has failed to state an access-to-courts claims.[4]

Dismissal will be granted as to both portions of Plaintiff's First Amendment claim at Count III. Because Plaintiff's claim based on the First Amendment right to petition is not actionable under any set of facts, amendment in this regard is futile and will be denied. However, Plaintiff will be given the opportunity to amend to state an access-to-courts claim.

---

[4] Besides failing to lay out the elements of an access-to-courts claim, Plaintiff has not provided sufficient factual detail as to the participation of Smock or Ennis.

## VI. THE EIGHTH AMENDMENT CLAIMS

So then, the only remaining claims against the Department of Corrections Defendants are:

> Count I – deliberate indifference against Santos and Smock based on the failure to carry out the order for a bottom tier housing assignment;
>
> Count II – deliberate indifference against Smock and Ennis for the denial of medical care based on non-medical reasons; and
>
> Count III – deliberate indifference against Smock and Ennis based on denial of wheelchair and deprivation of showers.

To prevail on any § 1983 claim, a plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) *quoting Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006). In other words, each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs failed to set forth sufficient facts to establish certain defendants played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendants are supervising prison officials. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged

wrongs"); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[L]iability cannot be predicated solely on the operation of respondeat superior."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990).[5]

*Count I*

The deliberate indifference claim at Count I is based on the failure of Santos and Smock to carry out Dr. Hartwell's order for a bottom tier housing assignment. Defendants argue for the dismissal of both Defendants because Plaintiff has not pled their personal involvement. Defendants are mistaken.

Plaintiff alleges that both Santos and Smock had a duty under §10 of the Policy 13.2.1 (which imposes a duty to ensure that medical orders are properly documented, monitored, and carried out, and to inform other staff of others properly house inmates) (*id*. at ¶¶ 31-32); were aware that their failure to ensure a bottom tier assignment would likely mean he was assigned to top tier  (*id*. at ¶ 39); acted with deliberate indifference in causing Plaintiff to be housed on the top tier because they each knew of, yet disregarded Plaintiff's order of bottom tier and the attendant likelihood that Plaintiff would undergo extreme pain and physically injure himself

---

[5] A supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

should he be housed on the top tier (*id*. at ¶ 41). Moreover, Smock, the CHCA, was required to forward a copy to Santos and Santos was required to ensure that all three shifts were informed of the bottom tier assignment (*id*. at ¶ 33) and Santos, the unit manager, had personal knowledge of Dr. Hartwell's orders for a bottom bunk/bottom tier housing assignment (ECF No. 67, ¶ 29) and yet assigned Plaintiff to a top tier cell on September 11th (*id*. at ¶ 36)

These factual allegations are sufficient to state the personal involvement of these Defendants and to withstand a motion to dismiss. While Plaintiff will have the burden to prove these allegations at trial, this claim will be allowed to proceed to discovery.

*Count II*

At Count II of the Amended Complaint, Plaintiff alleges that Ennis and Smock, together with Dr. Hartwell, acted with deliberate indifference by denying him medical care for non-medical reasons. ECF No. 67, ¶ 79.[6]

Plaintiff alleges that a team, of which Dr. Hartwell, Ennis, and Smock were members, made a concerted decision to "label" him as feigning the extent of his injuries and denied him a wheelchair and other unspecified medical treatment for his paralysis. These Defendants told Plaintiff that "after the team discussed your alleged injury, we decided that you do not require any further treatment because nobody believes you." ECF No. 67, at ¶ 50. Plaintiff believes that he has been denied medical assessments, diagnostic testing, rehabilitation, and referrals to specialists thereby risking any chance of curing his paralysis and nerve pain. *Id*. at ¶ 55.

Although they are limited, these allegations are sufficient to implicate the personal

---

[6] This portion of the Amended Complaint does not provide any further specifics but does incorporate paragraphs 1-55.

11

involvement of Ennis and Smock. At this stage of the proceedings, this Court must assume the veracity of these allegations. *See Burtch*, 662 F.3d at 221. The motion to dismiss will be denied in this regard.

*Count III*

The remaining claim at Count III is an alleged violation of the Eighth Amendment against Smock and Ennis based on denial of access to showers "over a long period of time." ECF No. 67, ¶ 81.

While the deprivation of showers may rise to the level of deliberate indifference (*see Williams v. Russell*, 2021 WL 5050116 (E.D. Pa. 2021)), Plaintiff has not provided any factual allegation detailing how either Smock or Ennis were personally involved in the deprivation. Accordingly, this claim will be dismissed.

VII. **FUTILITY OF AMENDMENT**

In pro se civil rights actions, "district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Coleman v. Acad. Bus LLC*, 858 Fed. App'x 584, 585 (3d Cir. 2021) *quoting Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007); Fed.R.Civ.P. 15(a)(2) ("the court should freely give leave [to amend] when justice so requires.").

The Court's final inquiry is whether the dismissal of Plaintiff's claims is with or without prejudice and whether to grant him leave to amend his claims. Leave to amend is appropriate unless an amendment would be inequitable or futile. *See Alston v. Parker,* 363 F.3d 229, 235 (3d

Cir. 2004). The Court will grant leave for Plaintiff to amend his claim for denial of access-to-court arising from the deprivation of access to the law library and the personal involvement of Ennis and Smock.

However, the Court finds that leave to amend the remainder of Plaintiff's claims would be futile and will deny same. *See Alston*, 363 F.3d at 235. To summarize, the Fourteenth Amendment claims are precluded by the more specific provision rule and the claim that Plaintiff was denied a purported right to exhaustion under the petition clause of the First Amendment claim is not actionable.

An appropriate Order follows this Memorandum Opinion.